UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| L. L., JUSTIN LAPOINTE, MARY LAPOINTE, and KAYLEIGH LAPOINTE<br><br>*Plaintiffs*,<br><br>v.<br><br>NEWELL BRANDS INC., TARGET STORES INC., HAIER US APPLIANCES SOLUTIONS, INC., and GENERAL ELECTRIC COMPANY<br><br>*Defendants*. | No. 3:23-cv-00803-MPS |

## RULING ON MOTIONS TO DISMISS

### I.     INTRODUCTION

L. L., an infant and one of the plaintiffs in this case, allegedly suffered severe burns after her mother placed the car seat she was seated in near a stove, and the car seat caught fire. L. L., her parents, and her aunt filed this case against Newell Brands Inc. ("Newell"), Target Stores, Inc. ("Target"), Haier US Appliance Solutions, Inc. ("Haier"), and General Electric Company ("GE"). The plaintiffs contend that L. L.'s injuries were caused by the defective design of the car seat and the stove, and they bring claims under the Connecticut Product Liability Act ("CPLA"), Conn. Gen. Stat. § 52-572m, et. *seq.*, and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a, et *seq.* L. L.'s parents also bring claims for loss of filial consortium. Newell, Target, and Haier filed partial motions to dismiss, each of which argues that (1) the plaintiffs' CUTPA claims are precluded by the CPLA's exclusivity provision, and (2) Connecticut law does not recognize a claim for loss of filial consortium. For the reasons stated herein, I grant the

1

defendants' motions to dismiss the plaintiffs' CUTPA claims. I deny without prejudice the defendants' motion to dismiss the parent plaintiffs' loss of consortium claims, as I will certify to the Connecticut Supreme Court the question of whether Connecticut law recognizes a claim for loss of filial consortium.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

The following facts, drawn from the plaintiffs' complaint, are accepted as true for the purpose of this motion.

### A.   L. L.'s Injury

On or around June 23, 2020, Mary Lapointe put her child, L. L., into a Graco 2501456SRS/35 Car Seat (the "Car Seat"), then placed the Car Seat on the kitchen counter adjacent to a Household Electric Range stove (the "Stove"). ECF No. 1 ¶¶ 33-34. After Mary Lapointe left to "prepare[] a couple things around the house," the Car Seat caught fire. *Id.* ¶ 34-35. L. L.'s aunt, Kayleigh Lapointe, entered the kitchen, saw the fire, and rescued the infant from the burning Car Seat. *Id.* ¶¶ 169-71. L. L. and Kayleigh Lapointe both "suffered severe injuries and burns." *Id.* ¶¶ 36, 171. L.L.'s parents, Mary Lapointe and Justin Lapointe, "lost the consortium, society, care and companionship of [their] daughter" because of her injuries. *Id.* ¶¶ 426, 430.

The Car Seat is a "product sold by [Newell and Target] and placed into the stream of commerce." *Id.* ¶¶ 32, 47. "Components of the [Car Seat] were required to pass the burn rates set in Federal Motor Vehicle Safety Standard ['FMVSS'] 302," but the Car Seat "contained components that did not pass FMVSS 302." *Id.* ¶¶ 103(a), 120(a). Both defendants "knew or should have known" that the Car Seat was "in defective, unsafe, and dangerous condition," failed to adequately warn customers about the risk of injury, and did not "conduct proper safety testing." *Id.* ¶¶ 41(a)-(k), 56(a)-(k). The Stove is a "product sold by [Haier and GE] and placed into the

stream of commerce"; GE designed the Stove before it sold its appliance business to Haier. *Id.* ¶¶ 63, 79-80. The stove was defective because its knobs "were not articulated with safety mechanisms and accidental touch could rotate the knobs and turn on the burners without warning to the consumer using it." *Id.* ¶¶ 138(a), 157(a). Both defendants "put the stove into the stream of commerce" despite that they "knew or should have known" that the Stove was "dangerous," failed to adequately warn customers about the risk of injury, and did not adequately test or inspect the Stove. *Id.* ¶¶ 72(a)-(o); 89(a)-(o).

### B. Procedural History

On June 21, 2023, Mary Lapointe, Kayleigh Lapointe, Justin Lapointe, and L. L., through next friend Justin Lapointe, filed this case against Newell, Target, Haier, and GE. The Complaint alleges, among other things, that (1) the Car Seat and the Stove were "defective and dangerous product[s]" under the CPLA (Counts 1-4, 9-12), (2) the defendants acted with a "reckless disregard for the safety of product users" (Counts 5-8, 13-16), and (3) the defendants violated CUTPA by failing to "take steps to make safe products" (Counts 17-24). Mary Lapointe and Justin Lapointe also bring claims for loss of consortium in their daughter, L. L. (Counts 25-40). On September 26, 2023, the plaintiffs agreed to dismiss the claims against GE with prejudice. ECF No. 55.

Newell, Target, and Haier moved to partially dismiss the Complaint. ECF Nos. 33, 37, 38. All three motions argue that (1) the plaintiffs' "CUTPA claims are precluded by the Connecticut Product Liability Act," and (2) Connecticut law does not recognize a cause of action for "[l]oss of consortium brought by parent plaintiffs for loss of companionship in a child." ECF No. 33 at 1; *see also* ECF Nos. 37, 38 (raising the same arguments). The plaintiffs filed an objection to each motion to dismiss, ECF Nos. 52, 53, 54, and Newell, Target, and Haier each filed a reply in support of its motion to dismiss, ECF Nos. 56, 57, 58.

3

## II. LEGAL STANDARD

To avoid dismissal under Fed. R. Civ. P. 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). I accept as true all of the complaint's factual allegations when evaluating a motion to dismiss, *id.*, and must "draw all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (citation omitted).

## III. DISCUSSION

### A. CUTPA Claims

Newell, Target, and Haier all argue that the plaintiffs' CUTPA claims must be dismissed, because they "are preempted by the Connecticut Products Liability Act's exclusivity provision." ECF No. 37-1 at 3-5; *see also* ECF No. 33-1 at 6-8 (raising the same point); ECF No. 38-1 at 3-6 (same). Since "[t]he CPLA is the 'exclusive means by which a party may secure a remedy for an injury caused by a defective product,'" a plaintiff's CUTPA claim is precluded if it "'falls within the scope of the product liability act.'" *Hunte v. Abbott Lab'ys, Inc.*, 556 F. Supp. 3d 70, 93 (D. Conn. 2021) (quoting *Gerrity v. R.J. Reynolds Tobacco Co.*, 263 Conn. 120, 126, 128 (2003)). The plaintiffs concede that their CUTPA claims are precluded by the CPLA, and agree to voluntarily withdraw Counts 17, 18, 19, 22, and 23. ECF No. 52 at 1-2; ECF No. 53 at 1-2; ECF No. 54 at 1-2. I therefore dismiss all of those counts. The plaintiffs' responses do not mention Count 21, which

4

raises a CUTPA claim against Newell on behalf of Plaintiff Kayleigh Lapointe. ECF No. 1 ¶¶ 366-379. Since Count 21 is substantively the same as other counts I have dismissed, I dismiss that count as well.

### B. Loss of Consortium Claims

Newell, Target, and Haier also argue that Connecticut law does not recognize a loss of consortium claim "brought by parents for the loss of companionship of a child," known as a loss of filial consortium claim. ECF No. 33-1 at 9; *see also* ECF No. 37-1 at 6-8 (making the same argument); ECF No. 38-1 at 6-8 (same). The plaintiffs respond that Connecticut law is unsettled as to whether parents can bring loss of filial consortium claims; they point out that Judge Underhill already certified this issue to the Connecticut Supreme Court, *see Hunte v. Abbott Lab'ys, Inc.*, 569 F. Supp. 3d 115 (D. Conn. 2021) (certifying the question: "Does Connecticut law recognize a cause of action for loss of filial consortium?"). They urge the Court to likewise certify the issue to the Connecticut Supreme Court. ECF No. 52 at 2-5. The defendants concede the issue is unsettled, but they suggest that "a decision on [the filial loss of consortium] issue be deferred as there would be no need to certify the issue to the Connecticut Supreme Court if there is a defendant's verdict in the case," ECF No. 57 at 1. Alternately, they argue that the Connecticut Supreme Court may "decide this issue during the course of this litigation," in which case certification would be unecessary.  ECF No. 56 at 2.

I agree with the plaintiffs that this issue should be certified to the Connecticut Supreme Court. Under Connecticut law, I may certify a question to the Connecticut Supreme Court "'if the answer may be determinative of an issue' in a case before [me] and 'if there is no controlling appellate decision, constitutional provision or statute.'" *Munn v. Hotchkiss Sch.*, 795 F.3d 324, 334 (2d Cir. 2015) (quoting Conn. Gen. Stat. § 51-199b(d)). "When deciding whether to certify a

5

question to the Connecticut Supreme Court, a court should consider, among other factors: '(1) the absence of authoritative state court decisions; (2) the importance of the issue to the state; and (3) the capacity of certification to resolve the litigation.'" *Bifolck v. Philip Morris, Inc.*, No. 3:06-CV-01768 (SRU), 2014 WL 585325, at *2 (D. Conn. Feb. 14, 2014) (quoting *O'Mara v. Town of Wappinger*, 485 F.3d 693, 698 (2d Cir. 2007)).

As the parties acknowledge, there is "no controlling appellate decision, constitutional provision or statute" governing loss of filial consortium claims in Connecticut. Conn. Gen. Stat. § 51-199b(d); *see* ECF No. 53 at 2 (plaintiffs acknowledging lack of appellate precedent); ECF No. 37-1 at 6 (Newell doing the same). In 2015, the Connecticut Supreme Court recognized "a cause of action by a minor child for loss of parental consortium resulting from an injury to a parent" for the first time. *Campos v. Coleman*, 319 Conn. 36, 38-39 (2015) (overruling *Mendillo v. Bd. of Educ.*, 246 Conn. 456 (1998)). Since then, Connecticut trial courts have split as to whether Connecticut law permits a cause of action by a parent for loss of filial consortium. *See, e.g.*, *Perez v. Stanford*, No. HHD-CV-19-6117765-S, 2021 WL 828560, at *2-6 (Conn. Super. Ct. Jan. 19, 2021) (recognizing loss of filial consortium claim); *Sugumar v. Greenfield Vill. Apartments, Inc.*, No. HHD-CV-20-6125341-S, 2021 WL 830020, at *1 (Conn. Super. Ct. Jan. 19, 2021) (same); *Stewart v. Bourque*, No. HHD-CV-21-6136075-S, 2023 WL 4072993, at *2-4 (Conn. Super. Ct. June 13, 2023) (declining to recognize loss of filial consortium claim); *Lenz v. CCMC Corp.*, No. HHD-CV23-6164591-S, 2023 WL 4574900, at *5 (Conn. Super. Ct. July 12, 2023) (same); *Qazi v. CCMC Corp.*, No. HHD-CV-23-6167189-S, 2023 WL 7543557, at *1-2 (Conn. Super. Ct. Nov. 7, 2023) (same).[1] Connecticut's Appellate Court and Supreme Court have not addressed this issue

---

[1] The defendants cite two cases from this district that were decided after 2015: *Cooke v. Kenny*, No. 3:21-CV-01244 (SALM), 2022 WL 168787 (D. Conn. Jan. 19, 2022), and *K.E. v. GlaxoSmithKline LLC*, No. 3:14-CV-01294 (VAB), 2017 WL 440242, at *1 (D. Conn. Feb. 1, 2017). Neither case persuasively resolves this issue. In *Cooke*, the

6

since *Campos* was decided. The absence of authoritative state decisions on this issue, and the split at the trial court level, counsel in favor of certification at this point.

Second, the question of whether Connecticut law permits a loss of filial consortium claim "implicate[s] important values in the evolution of [Connecticut's] tort law." *Fraser v. U.S.*, 30 F.3d 18, 20 (2d Cir. 1994), *certified question answered*, 236 Conn. 625 (1996). As Judge Underhill wrote in *Hunte*, this question "presents a sensitive issue of tort law within the peculiar province of the state, and the answer will involve weighing important policy considerations." 569 F. Supp. 3d at 127; *see also Munn*, 795 F.3d at 329 (2d Cir. 2015) ("We have long recognized that state courts should be accorded the first opportunity to decide significant issues of state law through the certification process, … especially where the issues implicate the weighing of policy concerns.'" (citations, internal quotations, and alterations omitted). Indeed, many trial courts have struggled with this exact issue after *Campos*.

Finally, the loss of filial consortium question "may be determinative of an issue" in this case, Conn. Gen. Stat. § 51-199b(d), since L. L.'s parents have brought several loss of filial consortium claims. And if I defer judgment on this question, as the defendants propose, I cannot be certain that the Connecticut Supreme Court will answer the question certified in *Hunte* during the course of this litigation. The Supreme Court accepted Judge Underhill's certification request on December 21, 2021, but the plaintiff moved to stay the proceedings, because the Judicial Panel of Multidistrict Litigation was considering consolidating the federal case in an MDL. Motion to

---

Court did not need to determine whether Connecticut law permits a loss of filial consortium claim, since the plaintiff failed to allege "that he was deprived of the support or company of a spouse or child." *Cooke*, 2022 WL 168787, at *5. In *K.E.*, the Court relied on precedent decided long before *Campos v. Coleman*. *K.E.*, 2017 WL 440242, at *24 (citing *Cimino v. Yale Univ.*, 638 F. Supp. 952, 956 (D. Conn. 1986) and *Hyun v. S. Kent Sch.*, 166 F.R.D. 272, 275 (D. Conn. 1996)). Before *Campos* was decided, the Connecticut Supreme Court had declined to recognize a loss of parental consortium claim, reasoning, in part, that recognizing a loss of parental consortium claim would require the court to "impose arbitrary limitations on the scope of the cause of action in order to avoid the creation of a practically unlimited class of potential plaintiffs" including "siblings, grandparent and grandchild, and aunt or uncle and nephew or niece." *Mendillo v. Bd. Of Educ.*, 246 Conn. 456, 485 (1998), *overruled by Campos*, 319 Conn. 36.

7

Stay the Proceedings, *Hunte v. Abbott Laboratories*, No. SC 20668 (January 20, 2022). The Connecticut Supreme Court then suspended the briefing schedule and directed the parties to file a status report by April 11, 2022. Order, *Hunte*, No. SC 20668 (February 8, 2022). The parties' status report stated that the JPML consolidated *Hunte* and other infant formula litigation in the Northern District of Illinois and proposed that the Connecticut Supreme Court "continue to defer briefing in this appeal." Joint Status Report, *Hunte*, No. SC 20668 (April 8, 2022). In the nearly two years since that status report, there has been no activity on the docket. As the Illinois infant formula MDL is ongoing, I cannot determine when the Connecticut Supreme Court may answer the question Judge Underhill certified, if it will do so at all. In any event, the proceedings in *Hunte* are entirely unrelated to the proceedings in this case, as the cases arise from different factual backgrounds.[2]

Thus, I find that certification to the Connecticut Supreme Court is warranted in this case, because Connecticut law is unsettled on loss of filial consortium claims, Connecticut's Supreme Court is better equipped to resolve the public policy concerns those loss of filial consortium claims raise, and the Connecticut Supreme Court may not reach a decision in *Hunte* during the course of the litigation.

---

[2] Of most relevance to the loss of filial consortium claims, the parent plaintiffs in *Hunte* allege that their child died after several months in the neonatal intensive care unit. *See Hunte*, 569 F. Supp. 3d at 118. In this case, the parent plaintiffs allege that their child had severe injuries but survived. At least one Connecticut court has held that a parent can sue for loss of filial consortium during the child's lifetime but cannot bring a claim for post-mortem loss of filial consortium, because such a claim is precluded by Connecticut's wrongful death statute. *Lynch v. State*, No. HHD-CV-16-6067438-S, 2021 WL 4520325, at *48-50 (Conn. Super. Ct. Aug. 27, 2021); *see also Vincent v. Yale New Haven Health Servs. Corp.*, No. KNL-CV-18-6035007-S, 2018 WL 7107584, at *1-2 (Conn. Super. Ct. Dec. 27, 2018) (holding that claim for postmortem loss of filial consortium is not available); *Zamora-George v. Yale New Haven Hosp., Inc.*, No. NNH-CV-19-6087777-S, 2020 WL 1656201, at *3-4 (Conn. Super. Ct. Feb. 21, 2020) (same). The distinction between claims for loss of filial consortium during an injured child's lifetime, and claims for postmortem loss of filial consortium, may affect the outcome in *Hunte*.

IV.  **CONCLUSION**

For the foregoing reasons, the defendants' partial motions to dismiss (ECF Nos. 33, 37, 38) are granted in part and denied in part. I grant the defendants' motions to dismiss the plaintiffs' CUTPA claims (Counts 17-24). However, I deny without prejudice the defendants' motions to dismiss the plaintisffs' loss of consortium claims (Counts 25-40), as I will certify this issue to the Connecticut Supreme Court.

Under Connecticut law, a certification order must include: "(1) The question of law to be answered; (2) The facts relevant to the question, showing fully the nature of the controversy out of which the question arose; (3) That the receiving court may reformulate the question; and (4) The names and addresses of counsel of record and unrepresented parties." Conn. Gen. Stat. § 51-199b(f). "If the parties cannot agree upon a statement of facts, then the certifying court shall determine the relevant facts and shall state them as part of its certification order." *Id.* § 51-199b(g). The parties shall stipulate to a statement of facts within 30 days of this order, i.e., on or by February 23, 2024. If the parties are unable to agree as to all or some facts, they should file a notice indicating that they cannot agree on or by February 23, 2024. If that occurs, I will use the factual allegations in the complaint for the facts in my certification order.

IT IS SO ORDERED.

_____/s/_____

Michael P. Shea, U.S.D.J.

Dated:        Hartford, Connecticut

              January 23, 2024